**SYNERGY GAS CO.,**
**Plaintiff–Appellant,**

v.

**Robert SASSO, Individually and as President of Local 282, Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Defendant–Appellee.**

**No. 1130, Docket 88–7153.**

United States Court of Appeals,
Second Circuit.

Argued May 16, 1988.

Decided July 26, 1988.

Peter A. Schneider, Melville, N.Y. (Kaufman, Frank, Naness, Schneider & Rosensweig, Melville, N.Y., of counsel), for plaintiff-appellant.

Franklin K. Moss, New York City (Friedman, Levy–Warren & Moss, New York City, of counsel), for defendant-appellee.

\* Honorable Neal P. McCurn, United States District Judge for the Northern District of New York, sitting by designation.

Before MESKILL and WINTER, Circuit Judges, and McCURN, District Judge.\*

MESKILL, Circuit Judge:

Plaintiff-appellant Synergy Gas Co. ("Synergy" or "the employer") appeals from an order of the United States District Court for the Eastern District of New York, Weinstein, J., that, *inter alia*, confirmed an arbitration decision awarding a discharged employee back pay and the employee's union reasonable attorney's fees and remanded the action to the arbitrator to determine the amount of attorney's fees and union dues payable. On appeal, Synergy argues that the district court erred in denying its motion to remand the action to state court and in confirming the arbitrator's award of attorney's fees and back pay because the arbitrator exceeded his authority in making such an award.

We conclude that the district court's order was final and appealable and that the petition for removal was timely. We affirm the district court's judgment.

## BACKGROUND

This action has a rather long and complicated history and only the pertinent highlights will be summarized here. James Brown, who was represented by Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America ("Local 282" or "the union"), was discharged by Glover Bottled Gas Corp. (Glover), Synergy's predecessor, in October 1980. The collective bargaining agreement (the agreement) entered into by Glover and the union contained a broad arbitration clause, which provided for arbitration of "[a]ll disputes between the parties to this Agreement." J. App. 14. Accordingly, the discharge was submitted to arbitration. On October 5, 1981, Arbitrator James Cashen issued an award, stating:

The Employer is directed to reinstate grievant retroactive to the date of discharge and is directed to provide griev-

ant with a lump sum back pay award equal to the difference between what grievant would have received in full employment with Glover during the period in question minus any amounts actually earned from other employment or received as unemployment insurance during the period.

*See id.* at 27.

Although section 12(e) of the agreement required that the parties comply with the terms of any arbitration decision within fifteen days, the employer did not reinstate Brown or provide him with any back pay. Rather, the employer brought an action in New York State Supreme Court, Suffolk County, seeking to vacate the arbitration award because of alleged misconduct by Cashen. The state court action was unsuccessful and the award was confirmed. The confirmation was affirmed by the Appellate Division. *Glover Bottled Gas Corp. v. Local 282, IBT,* 119 A.D.2d 727, 501 N.Y.S.2d 394 (2d Dep't 1986).

The employer still refused to reinstate Brown or to pay him any back pay, however, allegedly because of subsequent events, including the decline of Brown's health. Local 282 then filed a new grievance seeking a determination of "[h]ow much money and what other relief are James Brown and Local 282 and [its] affiliated funds entitled to receive pursuant to the arbitration award of James Cashen dated October 5, 1981." *See* J.App. 31.

The new action was assigned to Arbitrator Jesse Simons. On June 15, 1987, after four days of hearings, Arbitrator Simons issued an opinion and award directing Synergy to pay Brown back pay in the amount of $57,285 plus accrued interest, minus the amount of union dues that would have been deducted from Brown's wages, with the amount of said dues to be paid to Local 282. The award also directed Synergy to make certain contributions to the Local 282 Pension Trust Fund and to pay to Local 282 "a sum equal to the reasonable attorneys' fees incurred as a result of litigating the Employer's refusal to comply with Arbitrator Cashen's Award of October 5, 1981 in violation of Section 12(e) of the [agree-

ment.]" *Id.* at 428. Arbitrator Simons explicitly retained jurisdiction to determine the amount of union dues and attorney's fees, and indicated that hearings to set these amounts would be scheduled as promptly as possible.

On June 23, 1987, the attorney for Local 282 wrote to the employer's attorney, requesting payment of $513 in union dues and $50,000 in attorney's fees pursuant to the Simons award. The employer did not agree to pay these amounts, and the union then contacted Arbitrator Simons and requested that he determine the amount of attorney's fees and union dues to be paid.

Synergy subsequently initiated a lawsuit in New York State Supreme Court, Nassau County, seeking to vacate the Simons award and to stay further arbitration proceedings. A stay of arbitration was granted on July 30, 1987. Local 282 then removed the action to federal court, and Synergy filed a motion to remand the proceeding to state court, arguing that the petition for removal was untimely because the Nassau County proceeding was a continuation of the prior Suffolk County action. In an oral decision on September 11, 1987, Judge Weinstein denied this motion, holding that the two state court actions were independent proceedings. *See* J.App. 526.

Subsequently, both parties moved for summary judgment. By an oral opinion on January 25, 1988 followed by an order dated February 4, 1988, the district court confirmed the Simons award and remanded the issues concerning union dues and attorney's fees to the arbitrator, retaining jurisdiction with respect to the subject matter of the remand.

Synergy then brought this appeal, arguing that the district court should have granted its motion to remand the action to state court and that the court erred in confirming Arbitrator Simons' award.

## DISCUSSION

I. *Jurisdiction*

 Under 28 U.S.C. § 1291 (1982), courts of appeals "have jurisdiction of appeals from all final decisions of the district

courts of the United States." Both parties contend that the district court's order is final, and thus appealable. Nevertheless, we must make our own determination concerning whether we have jurisdiction to decide this appeal. *See Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976).

Although the district court did confirm Arbitrator Simons' decision to award attorney's fees and union dues, the amounts of these fees and dues have not yet been set. Thus there is a question whether the district court's order confirming the Simons award is a final decision within the meaning of section 1291. In resolving this issue, the Supreme Court's very recent decision in *Budinich v. Becton Dickinson and Co.,* —— U.S. ——, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), provides guidance. In that case, the Court considered the question of whether a decision on the merits is a final decision within the meaning of section 1291 when the availability or amount of attorney's fees had not yet been determined. The Court concluded that in order to preserve "operational consistency and predictability in the overall application of § 1291," it was required to adopt "a uniform rule that an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final." *Id.* at ——, 108 S.Ct. at 1721. In light of this rule, we assume that the fact that the amount of attorney's fees has not yet been set does not deprive us of jurisdiction to decide this appeal. As to the question of union dues, we agree with the parties' submission that computation of this amount is simply a "ministerial task;" that is, determination of the dues will be mechanical and uncontroversial. *See Parks v. Pavkovic,* 753 F.2d 1397, 1401–02 (7th Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3529, 87 L.Ed.2d 653 (1985). Consequently, we conclude that the court's order confirming the arbitration award is final and appealable.

## II. *Remand to the State Court*

■ We must address one additional preliminary issue before we can reach the merits of Synergy's appeal. Synergy contends that the district court erred in denying its motion to remand this action to the New York State Supreme Court, Nassau County, because Synergy's petition for removal to federal court was untimely under 28 U.S.C. § 1446(b) (1982). Section 1446(b) provides that a petition for removal is to be filed within "thirty days after the receipt by the defendant ... of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Synergy posits that although Local 282 removed the 1987 action in the New York Supreme Court, Nassau County, to federal court promptly upon receipt of the petition to vacate the Simons award, the 1981 action in Suffolk County to vacate the Cashen award and the 1987 action to vacate the Simons award are the same proceeding. Synergy adds that the union's failure to remove the Suffolk County action in 1981 constitutes a waiver of its right to remove the Nassau County action in 1987.

In making this argument, Synergy relies on *Marchant v. Mead–Morrison Mfg. Co.,* 29 F.2d 40 (2d Cir.1928), *cert. denied,* 278 U.S. 655, 49 S.Ct. 179, 73 L.Ed. 565 (1929). In *Marchant,* we held that for removal purposes, an application for appointment of an arbitrator under an arbitration clause in a contract and a subsequent application for an order confirming the award were not separate proceedings; rather, "[i]t was all one arbitration proceeding...." *Id.* at 43. We thus concluded that since the proceeding for the appointment of an arbitrator took place in state court, the district court should have remanded the action seeking to confirm the arbitration award to state court. *Id.*

Synergy here argues that because the Simons award concerned the implementation of the Cashen award, the 1987 Nassau County petition to vacate the Simons award was "part and parcel" of the 1981 Suffolk County action. Synergy thus submits that *Marchant* is controlling and the petition for removal was untimely. We disagree. The 1981 Suffolk County action was based on alleged misconduct on the part of Arbitrator Cashen. In contrast, the 1987 Nassau County action included allegations by

Synergy that because of circumstances subsequent to the Cashen award, it had no obligation to reinstate him. For example, Synergy argued before Arbitrator Simons that the termination of the collective bargaining agreement ended its back pay obligations, and that Brown's job had been eliminated, and so Synergy did not have any obligation to rehire Brown. These issues were not addressed by Arbitrator Cashen nor were they considered in the 1981 Suffolk County proceeding. We therefore hold that the 1981 action and the 1987 action should be considered to be separate proceedings for removal purposes.

This conclusion that they are distinct proceedings is bolstered by our decision in *International Chemical Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43 (2d Cir.1985). In that case, we held that the elimination of a discharged employee's position in a new collective bargaining agreement raised a "new and separate issue" that was not considered by an arbitrator who had ordered reinstatement and back pay, and thus the case should go to fresh arbitration. *Id.* at 46. *See also Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987) (holding that district court erred in remanding compliance issues to the original arbitrator).

Moreover, we note that if *Marchant* were held to be controlling in cases like this one, unions and employees in the future would be compelled to remove all routine state court proceedings in order to preserve the right to remove any remotely related action that may subsequently arise. Especially in the context of arbitrable labor disputes, where judicial intervention by federal courts is disfavored, *see generally United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), such a result is undesirable. We thus hold that the petition for removal of the 1987 action was timely because this action is separate and distinct from the prior Suffolk County proceeding.

### III. *Confirmation of the Simons Award*

Synergy argues that the district court erred in confirming the award because Arbitrator Simons exceeded his authority in awarding attorney's fees, union dues and other payments to parties other than Brown, and that the award of back pay was "totally irrational." We first note that our "function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated." *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). The only statutory grounds for vacating an arbitration award are enumerated in section 10 of the Federal Arbitration Act, 9 U.S.C. § 10 (1982). Subsection (d) of section 10, which is the only subsection that is possibly relevant here, provides that an arbitration award can be vacated "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." We have consistently accorded the narrowest reading to this subsection, especially when it "has been invoked in the context of arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance." *In re Andros Compania Maritima, S.A.*, 579 F.2d 691, 703 (2d Cir.1978) (footnote omitted). *See also United States Steel and Carnegie Pension Fund v. Dickinson*, 753 F.2d 250, 252–53 (2d Cir.1985).

In this case, in making its argument that Arbitrator Simons exceeded his authority in making awards of payments other than back pay, Synergy relies on the stipulated submission to the arbitrator of the question of "[w]hat relief, if any, is James Brown entitled to pursuant to the Arbitration Award of James Cashen dated October 5, 1981?" Synergy contends that in light of this stipulation, the arbitrator only had authority to provide a back pay remedy to Brown, and that he had no authority to award anything to any party other than Brown.

It is true that the " 'scope of authority of arbitrators generally depends on

the intention of the parties to an arbitration, and is determined by the agreement or submission.'" *Ottley*, 819 F.2d at 376 (quoting 6 C.J.S. *Arbitration* § 69, at 280–81 (1975)). Nonetheless, we conclude that Arbitrator Simons had authority to award payments other than back pay. He expressly noted that it was his understanding that under the stipulated submission, he would adjudicate all of the union's claims for relief, especially considering the July 12, 1985 demand for arbitration that sought a determination of "[h]ow much money and what other relief are James Brown and Local 282 and affiliated funds entitled to receive pursuant to the arbitration award of James Cashen dated October 5, 1981?" *See* J.App. 362 n.*. During the hearings, when the parties were discussing the scope of the submission, Arbitrator Simons noted that the submission was agreed upon

> with the clarification, which is now on the record perhaps three times, that I have made, namely, that you are free to advance all these other claims, and I will adjudicate them, and he is free to advance arguments where you are not entitled to pension contributions, or payment of legal fees, or [payment of] medical fees, et cetera, et cetera?

J. App. 200. In addition, the parties apparently acquiesced to the arbitrator's interpretation of the stipulated submission.

> [Local 282's Counsel]: Based upon clarification and the understanding that you interpret this language to include—if it's justified—relief that might be actually paid to some other entity, I have no problem with that.
>
> THE ARBITRATOR: So when I said up for grabs, I mean up for grabs.
>
> [Synergy's Counsel]: Yes.
>
> THE ARBITRATOR: All right.
>
> [Synergy's Counsel]: Insert the words "If any," and—

*Id.* at 201. Considering the long standing rule that any doubt concerning the scope of the submission agreement is to be resolved in favor of coverage, *see Federal Commerce & Navigation Co. v. Kanematsu-Gosho, Ltd.*, 457 F.2d 387, 390 (2d Cir. 1972), we conclude that Arbitrator Simons had the authority under the stipulated submission to decide whether to award payments other than back pay, such as pension fund contributions, union dues and attorney's fees. Consequently, Synergy's argument that the arbitrator exceeded his authority in making such awards in light of the stipulated submission is devoid of merit.

■ Synergy also claims that because the Cashen award referred to a "lump sum back pay award," payments other than back pay could not be awarded. As Arbitrator Simons repeatedly explained, however, he understood back pay to include all those payments that were required to make Brown whole. In addition, he believed that in light of the requirement of section 12(e) of the agreement that a party comply with an award within fifteen days, he was to hold the employer liable for damages that were caused by its failure to comply. As the Supreme Court explained in *United Paperworkers International Union, AFL–CIO v. Misco, Inc.*, — U.S. —, —, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987), when it is contemplated that the arbitrator will determine remedies for contract violations, courts have no authority to disagree with the arbitrator's honest judgment in that respect. In addition, although an arbitrator's award settling a dispute should draw its essence from the contract, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* In light of these principles, we dismiss Synergy's contentions based on the purported scope of the Cashen award.

Synergy also raises additional arguments that relate only to the alleged impropriety of the awarding of the attorney's fees. Arbitrator Simons explained that he decided to award attorney's fees for two separate reasons: (1) because the employer violated the collective bargaining agreement twice—once by discharging Brown without just cause, and again by not complying with the mandate of the Cashen award that

it reinstate Brown and give him back pay; and (2) because the employer had acted in bad faith within the meaning of *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), by, *inter alia*, deliberately choosing to violate its contractual obligations, and by bringing "a wholly spurious and unmeritorious claim of arbitral misconduct," J.App. 424.

We first note that although attorney's fees are not routinely awarded in labor disputes, it has been held that they may be awarded in certain circumstances. For example, attorney's fees have been authorized in labor disputes where the employer's defenses are frivolous, in order to discourage "brazen" refusals to bargain. *See, e.g., Tiidee Products, Inc.*, 194 N.L.R.B. 1234, 1235 (1972), *modified and enforced*, 502 F.2d 349 (D.C.Cir.), *cert. denied*, 417 U.S. 921, 94 S.Ct. 2629, 41 L.Ed.2d 226 (1974). Moreover, it has been held that a court can properly make an award of attorney's fees when a party has unjustifiably refused to abide by an arbitrator's award. *See Courier–Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 282 (1st Cir.1983); *International Association of Machinists & Aerospace Workers v. Texas Steel Co.*, 639 F.2d 279, 284 (5th Cir.1981); *Chauffeurs, Teamsters and Helpers, Local Union No. 765 v. Stroehmann Brothers Co.*, 625 F.2d 1092, 1094 (3d Cir.1980); *International Union of District 50 v. Bowman Transportation, Inc.*, 421 F.2d 934, 935 (5th Cir.1970). *See also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 747, 103 S.Ct. 2161, 2172, 76 L.Ed.2d 277 (1983) (noting that the NLRB has the authority to order an employer to reimburse employees, against whom the employer had wrongfully brought suit, for attorney's fees and expenses); *Baptist Memorial Hospital*, 229 N.L.R.B. 45, 46 (awarding an employee attorney's fees that were incurred directly as a result of employer's unlawful policies and conduct in order to make employee whole), *aff'd*, 568 F.2d 1 (6th Cir.1977).

Arbitrators have also occasionally awarded attorney's fees. For example, in *Fortex Manufacturing Co. v. Local 1065, Amal-*

*gamated Clothing Workers of America*, 99 L.R.R.M. (BNA) 2303, 2304–05 (M.D.Ala.1978), the court enforced an arbitrator's decision to award attorney's fees. The arbitrator's decision had been based both on his finding that the defendant had acted in bad faith and on his belief that the fees should be considered to be damages because they were incurred by the plaintiff as a direct result of the defendant's unlawful actions. In addition, in *Litton Unit Handling Systems v. Shopmen's Local Union No. 522*, 90 L.R.R.M. (BNA) 3176, 3177 (S.D. Ohio 1975), the court concluded that an arbitrator had not exceeded his authority in awarding attorney's fees in order to compensate a party "for losses occasioned by obvious attempts to frustrate access to the contractually created arbitration forum."

■ In the instant case, in addition to the arguments based on the stipulated submission and the purported scope of the Cashen award, which we have previously dismissed, Synergy contends that the awarding of the attorney's fees is prohibited under New York C.P.L.R. § 7513 (McKinney 1980). Section 7513 provides that "[u]nless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including attorney's fees, incurred in the conduct of the arbitration, shall be paid as provided in the award." As we concluded in *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 231 & n. 6 (2d Cir.1982), however, section 7513 "does not bar the award of attorney's fees; it merely does not grant authority to do so." Accordingly, Synergy's argument concerning section 7513 can be quickly dismissed.

■ Synergy also claims that the award of attorney's fees was punitive in nature, and that under *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 356, 386 N.Y.S.2d 831, 832, 353 N.E.2d 793 (1976), an arbitrator is not authorized to award punitive damages as a matter of public policy under New York law. We are not convinced, however, that the award was punitive. Arbitrator

Simons emphasized that in awarding the fees, he was attempting to make the union whole for the costs that it had expended on behalf of Brown. *See* J.App. 421–23. Although Arbitrator Simons did also find that Synergy had acted in bad faith, this finding does not mandate the conclusion that the award was punitive. Rather, the award can be considered compensatory because if Synergy had not acted in bad faith, then Brown would have been reinstated more than six years ago and the attorney's fees would not have been incurred. As we recognized in *In re South East Atlantic Shipping Ltd.*, 356 F.2d 189 (2d Cir.1966), even if an arbitrator expresses moral outrage at a party's behavior and considers questions of business morality in deciding upon the proper remedy, the award, even if it is very liberal, does not necessarily constitute the imposition of "unlawful" punitive damages. *Id.* at 192. *See also General Drivers and Helpers Union, Local No. 554 v. Young and Hay Transportation Co.*, 522 F.2d 562, 568 (8th Cir.1975) (concluding that a court's award of attorney's fees in a labor dispute is an appropriate item of damages and is compensatory, rather than punitive); Note, *Punitive Damages in Arbitration: The Search for a Workable Rule*, 63 Cornell L.Rev. 272, 307 (1978) (recommending that arbitration awards that compensate parties for the costs of litigation be considered compensatory, rather than punitive).

Synergy also disputes certain factual findings of the arbitrator, such as the finding of bad faith. We dismiss these claims, however; "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Misco*, — U.S. at —, 108 S.Ct. at 370. As to Synergy's various arguments about why the award is irrational, we conclude that these contentions are also without merit because Arbitrator Simons certainly provided more than a "barely colorable justification" for his holdings, *see Pinkerton's NY Racing Security Service, Inc. v. Local 32E Service Employees International Union*,

805 F.2d 470, 473 (2d Cir.1986), in his well reasoned sixty-eight page opinion.

## CONCLUSION

For the foregoing reasons, we affirm.